## UNITED STATES ex rel. McCLINE v. MEYERING, Sheriff.

### No. 5271.

Circuit Court of Appeals, Seventh Circuit.

Dec. 12, 1934.

Rehearing Denied Jan. 3, 1935.

EVANS, Circuit Judge, dissenting.

Irvin C. Mollison, of Chicago, Ill., for appellant.

Thomas J. Courtney, State's Atty., of Chicago, Ill. (Henry E. Seyfarth, Asst. State's Atty., of Chicago, Ill., of counsel), for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from an order of the District Court discharging the writ of habeas corpus and remanding the relator, Leander McCline, to the custody of William D. Meyering, sheriff of Cook county, Ill., to be delivered to the agent of the state of Ten-

nessee. Appellant had been detained by appellee under a warrant issued by the Governor of the state of Illinois upon a request by the Governor of Tennessee, accompanied, by a copy of a warrant, certified as authentic by the Governor of Tennessee, charging Mc-Cline with having committed, on September 11, 1931, in the county of Maury, in the state of Tennessee, the crime of murder in the first degree.

On August 5, 1933, appellant filed a petition for a writ of habeas corpus in the criminal court of Cook county, which writ was discharged after a hearing. Appellant then sued out a writ of error in the Supreme Court of Illinois. The Supreme Court, on April 21, 1934, in an opinion reported in People ex rel. v. Meyering, 356 Ill. 210, 190 N. E. 261, affirmed the judgment of the criminal court of Cook county. Thereafter, on May 16, 1934, appellant filed a petition for a writ of habeas corpus in the District Court of the United States. The writ was issued and a hearing was held. The court found that it had jurisdiction, but concluded not to exercise its discretion upon the issues raised, for the reason that the entire matter had been before the Supreme Court of Illinois and orderly procedure in the matter suggested that petitioner might prosecute an appeal to the Supreme Court of the United States or file a petition for writ of certiorari in the latter court. Whereupon the writ was discharged and the respondent remanded to the custody of the sheriff of Cook county.

■ Extradition proceedings are not creatures of state law, but are controlled by the Constitution of the United States, article 4, § 2, and by sections 5278, 5279, of the Revised Statutes (18 USCA §§ 662, 663), passed thereunder. Smith-Hurd Ann. St. Ill. c. 60, § 1, Cahill Ill. Rev. St., c. 60, par. 1; People v. Meyering, 357 Ill. 166, 191 N. E. 318; People v. Baldwin, 341 Ill. 604, 174 N. E. 51. An examination of the requisition and warrant shows that the Governors of Tennessee and Illinois were attempting to comply with the section of the statute first mentioned.

■ The statute (Rev. St. § 5278 [18 USCA § 662]) clearly requires the requisition issued by the demanding Governor to contain "a copy of an indictment found, or affidavit made, before a magistrate * * * charging the person demanded with having committed a crime therein, certified as authentic by the governor * * * of the state from whence the person so charged has fled." Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291,

299, 29 L. Ed. 544; Ex parte Morgan (D. C.) 20 F. 298; Ex parte Reggel, 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250; Ex parte Hart (C. C. A.) 63 F. 249, 28 L. R. A. 801; Ex parte Gradington, 89 Tex. Cr. R. 432, 231 S. W. 781, 782; Compton v. Alabama, 214 U. S. 1, 29 S. Ct. 605, 53 L. Ed. 885, 16 Ann. Cas. 1098; State v. Hughes, 157 La. 652, 102 So. 824; In re Strauss, 197 U. S. 324, 25 S. Ct. 535, 49 L. Ed. 774.

In the case of Roberts v. Reilly, supra, the Supreme Court, speaking through Mr. Justice Matthews said:

"It must appear, therefore, to the governor of the state to whom such a demand is presented, before he can lawfully comply with it—First, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the state making the demand; and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand.

"The first of these prerequisites is a question of law, and is always open, upon the face of the papers, to judicial inquiry, on an application for a discharge under a writ of habeas corpus."

The certification of the warrant is not a sufficient compliance with the statute. Ex parte Morgan (D. C.) 20 F. 298, 307; State ex rel. Covington v. Hughes, 157 La. 652, 102 So. 824; State v. Hackett, 161 Tenn. 602, 33 S.W.(2d) 422. From the latter case, it will be seen that, at the time of the issuance of the requisition in question here, by the Governor of Tennessee, there was an adjudication by the Supreme Court of that state that such a requisition was insufficient and invalid.

■ The statute is one involving the substantial rights of citizens, and its essential elements must be strictly followed. Ex parte Morgan (D. C.) 20 F. 298, and Ex parte Hart (C. C. A.) 63 F. 249, 28 L. R. A. 801. Only by faithfully following the provisions of the statute may a person be lawfully deprived of his liberty and extradited from an asylum state to another state, there to be tried for the commission of a crime. The alleged fugitive has a right not to be imprisoned or dealt with by the states in disregard of those safeguards provided by the Constitution and statutes of the United States. Compton v. Alabama, 214 U. S. 1,

6, 29 S. Ct. 605, 53 L. Ed. 885, 16 Ann. Cas. 1098.

Upon the hearing in the District Court, when the writ was denied and the petitioner remanded, this interesting discussion took place between the court and counsel:

"Mr. Mollison: Both Governors certify that a warrant was authentic, but they never certified as to the complaint (affidavit) or indictment. You must certify one or the other. You cannot certify a warrant as the basis for an extradition proceeding. * * *

"The Court: I know when I was handling extradition matters in the Attorney General's Office, if they came to us like that, we wouldn't let them get by. We would send them back. * * *

"The Court: You had a hearing before the Supreme Court of Illinois. That might not be considered, yet it might be quite essential.

"Mr. Mollison: I submit that the former court in their opinion * * * didn't even consider the matter from the viewpoint of compliance with the United States Statutes, Section 5278 but rather whether Tennessee laws were complied with.

"The Court: As I understand it, I would not be inclined to concur with them. There is no certification of a copy of any complaint."

This colloquy clearly shows that the trial court recognized that the requisition executed by the Governor of Tennessee and the warrant ordered by the Governor of Illinois for the arrest of the prisoner showed upon their face that there was a clear defect in both of the documents; that is, that one of the very essential and material requirements, in such documents, had been omitted. When this became apparent upon the hearing in the District Court, the exercise of a sound judicial discretion by the court could have led to but one conclusion, and that was that the requisition and warrant were defective.

We fully appreciate the delicacy recognized by the District Court in entering an order that would be at variance with the holding of the Illinois Supreme Court upon a case arising out of the same facts as this one. However, the court had received the petition, had granted the writ, had partially heard the cause, and announced his views to the effect that the requisition and warrant were insufficient. Having gone that far, we are persuaded that the court should have entered such an order as was warranted upon the record before it.

It is true, the petitioner might have filed a petition for writ of certiorari in the Supreme Court of the United States to review the decision of the Illinois Supreme Court. However, that proceeding was one instituted by the petitioner here and under his control, and he might abandon it at any stage of the proceedings and avail himself of any other remedy.

In the view that we take of the substantial defect in the requisition of the Governor of Tennessee, and in the light of the fact that there may be subsequent proceedings, it may be well to suggest that the alleged affidavit, which was not certified, furnishes little or no evidence upon which to adjudicate the question of probable cause.

The murder took place September 11, 1931. On July 31, 1933, almost two years thereafter, the widow of the victim made oath that the petitioner "secretly and in the night concealed himself in ambush at a point close by the road which he knew one George Owen would soon pass, and on said day and at said place and while so concealed and secreted did with a shotgun deliberately, * * * shoot the said George Owen as the said George Owen passed by said point of ambush," and killed the victim, etc.

The facts sworn to could only have been known by the affiant if she was personally present and saw the things which she described. She does not say so, nor does she say that she has reasonable ground to believe that the accused did the things which she has sworn he did do. The inherent facts that the accused secretly in the night concealed himself in ambush and from that ambush shot and killed Owen with a shotgun show that in all probability she was not present.

The act of Congress makes no provision for the certification of a warrant in a requisition, but, in the absence of an indictment, the act of Congress permits the certification of an affidavit. Clearly the affidavit should contain facts from which the Governor of the asylum state may see that there is probable cause to believe that the accused committed the crime in question. The affidavit should state facts sufficient to satisfy the magistrate that probable cause exists. Lippman v. People, 175 Ill. 101, 51 N. E. 872. Of course if the grand jury has returned an indictment in the case, that document is prima facie evidence of probable cause.

The requisition was void before it left the state under the holding of the Supreme

Court of Tennessee. State v. Hackett, supra. It can be the source of but scant integrity to the warrant issued by the Governor of the asylum state.

The judgment of the District Court is reversed and the cause remanded, with directions to discharge the petitioner.

EVANS, Circuit Judge (dissenting).

On the authority of Goto v. Lane, 265 U. S. 393, 401, 44 S. Ct. 525, 527, 68 L. Ed. 1070; Urquhart v. Brown, 205 U. S. 179, 27 S. Ct. 459, 51 L. Ed. 760; Marbles v. Creecy, 215 U. S. 63, 30 S. Ct. 32, 54 L. Ed. 92, the District Court was not warranted in granting habeas corpus in view of the holding of the Supreme Court of Illinois on an exactly similar application, People v. Meyering, 356 Ill. 210, 190 N. E. 261.

The rule which governs the granting of a writ of habeas corpus after a similar application has been denied by a court of record in another jurisdiction after full hearing is stated as follows in Goto v. Lane, supra: " * * * they could have taken the case to that court [Supreme Court of Hawaii] on writ of error instead of on the reserved exceptions, and in that event a judgment of affirmance, if involving the denial of a right asserted under the Constitution, could have been brought by writ of error to this court for review in regular course. * * * In the federal courts a discharge on habeas corpus of a prisoner held to answer a criminal accusation or confined under a judgment of conviction is granted only in the exercise of a sound judicial discretion. * * * The remedy is an extraordinary one, out of the usual course * * *."

Petitioner should have applied to the Supreme Court for a review of the Illinois Supreme Court decision. Instead he chose to try the same question a second time. He is using the application for a writ of habeas corpus as a dilatory measure to postpone the date when he must answer the charge of murder. He has already succeeded in avoiding a return to Tennessee for a period of three and a half years. Unless we give some effect to the decisions of the Supreme Court of Illinois he may continue to make applications to Federal District Courts, followed by applications to the State Courts and appeals in each case, which will postpone the date of his return to Tennessee beyond the normal period of his life.

Both the Constitution of the United States, article 4, § 2, cl. 2, and the statute, section 662, title 18 USCA, require that the state executive surrender to the demanding officials of another state one charged with treason, felony, or other crime who has fled beyond the boundaries of the state wherein he committed the crime.

Neither the constitutional provision nor the statute confers a right upon the accused. Both deny to him the protection of the state to which he has fled. He may not hide behind the shield which his flight created.