ANNIE FERRIS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

June 20, 1919.

No. 21,209.

**Carrier — personal baggage — when liable for merchandise.**

1. Baggage means such articles of necessity and convenience as are usually carried by passengers for their personal use. It does not include merchandise held for sale, but, if the carrier knowingly accepts such

[1]Reported in 173 N. W. 178.

merchandise as baggage, its liability is the same as in case of other baggage. In this case the evidence sustains the finding of the jury that certain articles of merchandise kept for sale were accepted as baggage with notice of their character and use.

**Same — limitation of liability of carrier for loss.**

2. The limitation of the amount of the carrier's liability for loss is a matter of contract. A limitation in a schedule of rates published and filed as required by statute is not effective for the purpose if not assented to by the shipper.

**Same.**

3. A limitation on the baggage check does not limit the carrier's liability, unless assented to by the passenger, and there is a contract fairly and honestly entered into establishing the limitation.

**Same — burden of proof on carrier.**

4. The burden of proof is upon the carrier to prove that such a contract was fairly and honestly made.

Action in the municipal court of Waseca to recover $455 damages for lost baggage. The answer alleged that the tariff under which defendant operated its railroad contained a provision that unless a greater sum is declared by the passenger and charges paid for increased valuation at time of delivery to carrier, the value of baggage belonging to or checked for an adult passenger should be deemed and agreed to be not in excess of one hundred dollars; that the value of the personal baggage delivered by plaintiff to defendant did not exceed $20; that plaintiff did not at the time of procuring the checking of her grip or at any time declare the value of the baggage, and plaintiff did not pay defendant any sum whatever for transportation of her baggage. The case was tried before Childress, J., and a jury which returned a verdict for $420. From an order granting its motion for a new trial, plaintiff appealed. Reversed with directions to enter judgment on the verdict.

*Moonan & Moonan,* for appellant.

*R. B. Alberson, W. C. Odell* and *M. M. Joyce,* for respondent.

HALLAM, J.

Plaintiff was a peddler traveling about selling various articles of mer-

chandise. In November, 1917, plaintiff bought a ticket from Montgomery to Waterville on defendant's line and at the same time presented a grip, containing personal apparel and also certain articles which she had for sale, to defendant's agent and asked that the grip be checked to Waterville. The agent checked the grip and it was lost in transit. Defendant admitted liability. The questions litigated were: First, was defendant liable for the value of the merchandise; and, second, was there an effective limitation of the amount of liability.

Plaintiff had a verdict for $420, the value of the contents of the grip. The court granted a new trial exclusively upon errors occurring at the trial.

1. By the term baggage is meant such articles of necessity or personal convenience as are usually carried by passengers for their personal use. It does not include merchandise kept for sale. Story, Bailments, § 499; 10 C. J. 1187; Haines v. Chicago, St. P., M. & O. Ry. Co. 29 Minn. 160, 12 N. W. 447, 43 Am. Rep. 199. If, however, the carrier knowingly accepts as baggage a package containing ordinary merchandise, it waives any objection to the character of the property and its liability is the same as in case of ordinary baggage. 10 C. J. 1195; McKibbin v. Great Northern Ry. Co. 78 Minn. 232, 80 N. W. 1052. Defendant's regulations permit the carriage of sample goods as baggage. Plaintiff, in the presence of defendant's agent and before the grip had been checked, opened the grip to take out certain articles. The agent plainly saw that part of the contents of the grip consisted, not of personal apparel, but of merchandise such as is usually kept for sale. Plaintiff had been in the same business for ten years and had frequently checked this grip at Montgomery. With this evidence in the case, the court instructed the jury that, if the nature of the contents of the grip and the use the plaintiff proposed to make of them were known to defendant's agent at the time he accepted the grip as baggage and issued a baggage check therefor, defendant was liable for the full value of the contents of the grip. This instruction was correct. The jury by their verdict found that defendant's agent had such knowledge and the evidence sustains the findings.

2. Defendant contends that its liability is limited to $100. It contends that it has published and filed with the Railroad and Warehouse

Commission a schedule of rates which contains this language: "Unless a greater sum is declared by the passenger and charges paid for increased valuation at time of delivery to carrier, the value of baggage up to and including 150 pounds * * * shall be deemed and agreed to be not in excess of $100." We will assume that the evidence establishes this fact.

Our statutes require every railroad company to publish and file with the Railroad and Warehouse Commission schedules of rates, fares and charges for transportation of persons and property, and provide that such schedules shall state "any rules or regulations in any way affecting the aggregate of such rates, fares and charges," G. S. 1913, §§ 4342, 4344, and they prohibit "any unequal or unreasonable preference or advantage to any particular person." Section 4332. Defendant contends that the passenger is conclusively presumed to have knowledge of any limitation of liability in the schedules and regulations filed, and that such limitation fixes the amount of recovery in case of loss. This was substantially the rule applied by the United States Supreme Court in construing the Hepburn Act of June 29, 1906, the provisions of which are, in the particulars mentioned, much the same as ours, except that they refer to interstate commerce whereas ours refer to intrastate commerce. Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. ed. 314, 44 L.R.A.(N.S.) 257; Great Northern Ry. Co. v. O'Connor, 232 U. S. 508, 34 Sup. Ct. 380, 58 L. ed. 703; Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. ed. 868, L.R.A. 1915B, 450, Ann. Cas. 1915D, 593.

The court held in those cases that under the Hepburn Act the limitation of liability stated in the schedules is part of the rate; that where a tariff rate is based on value it fixes the rights and liabilities of the parties; that, if no value is stated, the tariff rates applicable to such a state of facts applies; that, if there are alternative rates based on value and the shipper accepts the lower rate, the carrier, if sued for loss, is liable only for the lower value. As to baggage cases that court held that a provision in a tariff schedule that the passenger must declare the value of his baggage and pay stated excess charges for excess liability is a "regulation" of which the shipper is bound to take notice, and that the effect of the regulation and the delivery and acceptance of the baggage

without declaration of value or notice to the carrier of such higher value is to charge the carrier with the maximum liability stated in the schedules.

Defendant urges us to follow the rule of these Federal decisions. With all due respect to that high authority, we are not disposed now to do so. The sections of our statutes above cited were originally enacted in 1887. Laws 1887, p. 53, c. 10, § 8, subds. a and b, and section 5. They have come down with little change. This court many years ago held that the limitation of the carrier's liability is matter of contract. Alair v. Northern Pacific R. Co. 53 Minn. 160, 54 N. W. 1072, 19 L.R. A. 764, 39 Am. St. 588; O'Malley v. Great Northern Ry. Co. 86 Minn. 380, 90 N. W. 974; Ostroot v. Northern Pacific Ry. Co. 111 Minn. 504, 127 N. W. 177; O'Connor v. Great Northern Ry. Co. 120 Minn. 359, 139 N. W. 618; O'Connor v. Great Northern Ry. Co. 118 Minn. 223, 136 N. W. 743; McGrath v. Northern Pacific Ry. Co. 121 Minn. 258, 141 N. W. 164, L. R. A. 1915D, 644.

Defendant contends that since section 4342 of our statutes was reenacted in 1907, chapter 377, p. 534, Laws 1907, after the passage of the Hepburn Act, our legislature must have intended to adopt the construction given the Hepburn Act by the Federal Supreme Court. This contention we do not sustain. The purpose of incorporating this section in the act of 1907 was plainly to amend it in a particular not material here.

It may be proper to observe that the rule of the Federal cases cited has been substantially modified by acts of Congress. U. S. Comp. St. 1916, § 8604a.

Our own judgment is that the rule of our own decisions is the correct one and we are not impelled at this time to abandon it.

3. Defendant contends that there was a limitation of its liability by contract. On the baggage check was printed this language: "Liability is limited to $100 * * * unless a greater value is declared by owner at time of checking and payment is made therefor." The claim of a contract is based upon these words printed on the baggage check. The baggage check is not ordinarily a contract of carriage. It is merely a receipt. 10 C. J. 1199; Isaacson v. New York Central & H. R. R. Co. 94 N. Y. 278, 286, 46 Am. Rep. 142. It is well settled by decisions of

this court that such language on a baggage check does not operate to limit the carrier's liability, unless the passenger in fact consented to the limitation and there was a contract fairly and honestly entered into between the parties establishing the limitation of liability. See Ford v. Chicago, R. I. & Pac. Ry. Co. 123 Minn. 87, 90, 143 N. W. 249. There is no evidence of any real negotiation in this case, no evidence in fact that the limitation ever came to the attention of plaintiff.

4. The trial court charged the jury that the burden of proof was upon the defendant to establish the fact that there was an agreement expressed or implied, fairly and honestly entered into limiting defendant's liability. The trial court later conceived that this was error and from the memorandum filed it appears that he granted a new trial on this ground. In our opinion the instruction was right and the order granting a new trial was error. Our decisions are not quite explicit as to the burden of proof in such cases. It is held, however, that contracts limiting liability are effective only "when it is made to appear that they are just and reasonable." Ostroot v. Northern Pacific Ry. Co. 111 Minn. 504, 127 N. W. 177; Murphy v. Wells-Fargo & Co. Express, 99 Minn. 230, 108 N. W. 1070. We think the rule properly deducible from our decisions is that contracts limiting liability are in derogation of the common law and are not favored, that the burden is on the carrier to show that there was a stipulation effective for that purpose, that is to prove not merely a contract in form but a contract made understandingly. This is the generally accepted rule. 4 R. C. L. 920; Wabash R. Co. v. Thomas, 222 Ill. 337, 78 N. E. 777, 7 L.R.A.(N. S.) 1041; Houtz v. Union Pac. R. Co. 33 Utah, 175, 93 Pac. 439, 17 L.R.A.(N.S.) 628; Toledo St. L. & W. R. Co. v. Milner, 62 Ind. App. 208, 110 N. E. 756; Cleveland, C. C. & St. L. R. Co. v. Patton, 203 Ill. 376, 67 N. E. 804; Grice v. Oregon-Washington R. & Navigation Co. 78 Ore. 17, 150 Pac. 862, 152 Pac. 509, Ann. Cas. 1917E, 645; Rosenfeld v. Peoria, D. & E. Ry. Co. 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500. We conclude that the charge was right and that it was error to grant a new trial.

Order reversed with directions to enter judgment on the verdict.